UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICHAEL J. ST. PIERRE,            :
        Plaintiff,               :
                                 :
     v.                          :        CA 05-395 S
                                 :
MICHAEL J. ASTRUE,[1]            :
COMMISSIONER OF SOCIAL SECURITY, :
        Defendant.               :

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Michael J. St. Pierre ("Plaintiff") has filed a motion for summary judgment. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff was not disabled "at any

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Astrue is hereby substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

time through [June 10, 2005]," (Record ("R.") at 24), is not supported by substantial evidence to the extent that the decision denies Plaintiff's disability benefits on and after July 8, 2004. Accordingly, based on the following analysis, I recommend that Plaintiff's Motion for Summary Judgment or Alternative, for Remand (Document ("Doc.") #9) ("Motion for Remand") be granted and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #12) ("Motion to Affirm") be denied.

### Facts and Travel

Plaintiff was born on March 27, 1962.  (R. at 31, 91)  He has a high school education and past relevant work experience as a maintenance worker, cook, bus driver, and bus maintenance person.  (R. at 14, 32-33, 112, 117, 122)

Plaintiff filed an application for DIB on or about April 23, 2003, alleging disability since June 1, 2002, due to degenerative hip disease, difficulty ambulating, and depression.  (R. at 14, 91-93, 111)  The application was denied initially and on reconsideration.  (R. at 13, 62-70)  A request for a hearing before an administrative law judge ("ALJ") was untimely filed, but an ALJ found good cause for Plaintiff's failure to meet the deadline to request review.  (R. at 13, 71-72)  A different ALJ conducted a hearing on March 31, 2005, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  (R. at 13, 26-61)  On June 10, 2005, the ALJ issued a decision in which he found that Plaintiff was not disabled.  (R. at 13-24)  Plaintiff sought review of the ALJ's decision by the Appeals Council, (R. at 9, 381-82), which on July 18, 2005, denied Plaintiff's request for review, (R. at 5-7), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 5).

A Complaint (Doc. #1) was filed in this Court on September 16, 2005.  Defendant on February 16, 2006, filed his Answer (Doc.

#6).  An Order (Doc. #7) referring the case to this Magistrate
Judge for a report and recommendation was entered on March 6,
2006.  On May 8, 2006, Plaintiff's Motion for Remand (Doc. #9)
was filed, followed on June 21, 2006, by Defendant's Motion to
Affirm (Doc. #12).  Plaintiff's Reply Memorandum (Doc. #13)
("Plaintiff's Reply") was filed on June 29, 2006.

## Issue

The issue for determination is whether the decision of the
Commissioner that Plaintiff is not disabled within the meaning of
the Act, as amended, is supported by substantial evidence in the
record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is
limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).
Although questions of law are reviewed de novo, the
Commissioner's findings of fact, if supported by substantial
evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. §
405(g)).  The determination of substantiality is based upon an
evaluation of the record as a whole.  Id. (citing Irlanda Ortiz
v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir.
1999)("We must uphold the [Commissioner's] findings ... if a
reasonable mind, reviewing the evidence in the record as a whole,
could accept it as adequate to support his conclusion.")(second
alteration in original)).  The Court does not reinterpret the
evidence or otherwise substitute its own judgment for that of the
Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health &

---

[2] The Supreme Court has defined substantial evidence as "more
than a mere scintilla.  It means such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)
(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct.
206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289
(D.R.I. 1992).

Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the
resolution of conflicts in the evidence is for the Commissioner,
not the courts."  Id. at 31 (citing Rodriquez v. Sec'y of Health
& Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing
Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426
(1971))).

### Law

To qualify for DIB, a claimant must meet certain insured
status requirements,[3] be younger than sixty-five years of age,
file an application for benefits, and be under a disability as
defined by the Act.  See 42 U.S.C. § 423(a).  The Act defines
disability as the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months ...."  42 U.S.C. §
423(d)(1)(A).  A claimant's impairment must be of such severity
that he is unable to perform his previous work or any other kind
of substantial gainful employment which exists in the national
economy.  See 42 U.S.C. § 423(d)(2)(A).  A claimant's complaints
alone cannot provide a basis for entitlement when they are not
supported by medical evidence.  See Avery v. Sec'y of Health &
Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step
inquiry for use in determining whether a claimant is disabled.
See 20 C.F.R. § 404.1520(a) (2007; see also Bowen v. Yuckert, 482
U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st
Cir. 2001).  Pursuant to that scheme, the Commissioner must
determine sequentially: (1) whether the claimant is presently

---

[3] Plaintiff met the insured status requirements as of June 1,
2002, the alleged onset of his disability, and continues to meet them
through December 31, 2007.  (R. at 14, 23)

engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at any step.  See Seavey, 276 F.3d at 4.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not performed any substantial gainful activity since June 1, 2002, the alleged onset of his disability; that his degenerative joint disease of the hips, right greater than left, obesity, and depression were severe impairments; that, nonetheless, his impairments did not meet or equal in severity a listed impairment; that his allegations regarding his impairments and their impact on his ability to work were not fully credible in light of his treatment, his response to treatment, his activity level, and the reports of his treating and examining physicians; that he retained the residual functional capacity ("RFC") to lift and carry twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, to stand and walk for two hours out of an eight hour work day (but not to use leg controls), to maintain concentration and attention sufficient to perform simple work tasks for an eight hour work day, assuming short work breaks on average every two hours, and to maintain

concentration or attention required for somewhat more complex or detailed tasks occasionally, but not for extended periods of time; that his RFC precluded performance of his past relevant work; that he was a "younger individual," as defined by the regulations, with a high school education; that there existed a significant number of jobs in the regional and national economy which Plaintiff could perform consistent with his RFC, including unskilled light occupations such as hand cutter and inspector as well as unskilled sedentary occupations such as assembler, sorter, and packer; and that, therefore, Plaintiff was not disabled within the meaning of the Act.  (R. at 23-24)

### Errors Claimed

Plaintiff alleges that the ALJ's RFC finding is contradicted by unrebutted treating and examining source evidence of Plaintiff's physical and mental impairments, Memorandum in Support of Plaintiff's Motion to Remand the Decision of the Commissioner of the Social Security Administration ("Plaintiff's Mem.") at 13, and that the ALJ's decision contained no legally sufficient explanation for his credibility finding, id. at 17.

### Discussion

**I.    The Assessment of Plaintiff's Physical Impairment**

**A.    The Deterioration in Plaintiff's Physical Condition**

Plaintiff argues that the ALJ failed to consider the evidence of Plaintiff's worsening orthopedic condition.  Id. at 1.  The Court is compelled to agree.  On November 13, 2003, Plaintiff's treating orthopedist, Jacques Bonnet-Eymard, M.D.,[4] examined Plaintiff and viewed x-rays of his hips.  (R. at 343)

---

[4] Plaintiff had been treating with Dr. Bonnet-Eymard since Plaintiff was fourteen years old.  (R. at 47)

Those x-rays showed "[f]airly stable arthritis."[5]  (Id.)
However, eight months later, on July 8, 2004, Dr. Bonnet-Eymard
noted that Plaintiff's x-rays indicated a "[w]orsening of the
degenerative joint disease of both hips." (R. at 344)  Dr.
Bonnet-Eymard warned Plaintiff that the need for "surgery might
come fast[er]." Id.  Thereafter, the deterioration in
Plaintiff's condition continued.  On February 28, 2005, Dr.
Bonnet-Eymard again viewed x-rays of Plaintiff and noted that
"[h]e is getting worse." (R. at 345)  In the history portion of
the report, the doctor wrote that Plaintiff was not doing well.
(Id.)  Nowhere in his decision does the ALJ mention the worsening
of Plaintiff's condition which occurred beginning in the summer
of 2004.  Cf. Rasmussen-Scholter v. Barnhart, No. Civ.A. 03-
11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004)("The
ALJ ... may not ignore relevant evidence, especially evidence
that supports a claimant's cause.")(citing Nguyen v. Chater, 172
F.3d 31, 35 (1st Cir. 1999)).

   **B.  The Determination of Plaintiff's RFC**

   In determining Plaintiff's RFC, the ALJ relied upon the
administrative findings of fact made by the state agency medical
physician, Beth Schaff, M.D. (R. at 17-18, 23)  However, Dr.
Schaff's assessment is dated June 10, 2003, (R. at 163), thirteen
months before Dr. Bonnet-Eymard noted the deterioration of
Plaintiff's condition.  Thus, Dr. Schaff's assessment of
Plaintiff's capabilities was based on his condition prior to the
deterioration documented in x-rays taken in July 2004 and
February 2005.  Given that Dr. Schaff's assessment is the only
medical opinion which supports the RFC determined by the ALJ,

_____

   [5] X-rays taken three years earlier in August of 2000 showed
"significant osteoarthritis," (R. at 154), of Plaintiff's right hip
and "mild degenerative changes," (id.), in his left hip.

substantial evidence to support that RFC is lacking.[6]  <u>Cf.
Gordils v. Sec'y of Health & Human Servs.</u>, 921 F.2d 327, 330 (1st
Cir. 1990)(noting that non-examining physician "did not have the
complete medical record before him when he formed his opinion");
<u>Rosario v. Apfel</u>, 85 F.Supp.2d 62, 68 (D. Mass. 2000)("The ALJ
relied on the non-treating physicians' review of only a partial
record."); <u>Chelte v. Apfel</u>, 76 F.Supp.2d 104, 108 (D. Mass. 1999)
(finding error of law because "[t]he ALJ relied on nontreating
physician review of only a partial record").

### C.  The Assessment of Plaintiff's Credibility

The ALJ's apparent failure to consider the deterioration in
Plaintiff's physical condition also undermines his credibility
determination.  The ALJ found that:

> [Plaintiff's] statements concerning his impairments and
> their impact on his ability to work are considerably more
> limited and restricted than is established by the medical
> evidence.  It is concluded that his described limitations
> are to a significant degree self-imposed restrictions,
> not limitations indicated by the medical evidence.  The
> allegations of disabling pain and fatigue are not
> medically supported in the medical evidence by clinical
> signs, symptoms, or laboratory findings and his
> activities of daily living have not been profoundly
> compromised by his impairments.  While he alleges
> difficulty sleeping, he has reported to treating sources
> that he has no difficulty sleeping, and testified to only
> using Zoloft, prescribed by his PCP, and Vioxx, on an as
> needed basis.  This is not to say that the claimant is

---

[6] The other state agency medical physician, Saro Palmeri, M.D.,
reviewed the record on July 15, 2003, and found that Plaintiff could
walk and sit with "breaks h[ou]rly." (R. at 167)  In this respect,
Dr. Palmeri agreed with an earlier assessment by Plaintiff's primary
care physician, Dr. Jerald Kupperberg.  Dr. Kupperberg wrote on May
23, 2003, that "[Plaintiff] can sit but needs a break every hour to
relieve contraction + pain." (R. at 155)  However, the ALJ in
formulating his hypothetical asked the VE to "assum[e] normal work
breaks, on average, every two hours." (R. at 56); <u>see also</u> (R. at 21,
23)  Thus, the ALJ rejected the more frequent rest breaks which these
two physicians opined Plaintiff required even before the deterioration
in his condition.

> pain-free or does not experience some side effects from
> his medication.  However, the medical evidence falls far
> short of demonstrating the existence of pain and
> limitations of such severity as to preclude the claimant
> from performing any work on a regular and continuing
> basis.  It is for these reasons the undersigned
> Administrative Law Judge finds the claimant not fully
> credible.

(R. at 21)(internal citations omitted).

Given that the July 2004 and February 2005 x-rays indicate that Plaintiff's condition is getting worse, the ALJ's statement that Plaintiff's complaints of disabling pain and fatigue are not medically supported is contradicted by the record.  X-rays certainly constitute "clinical signs, symptoms, or laboratory findings."  SSR 83-19, 1983 WL 31248, at *3.  Thus, the ALJ's conclusion that Plaintiff's "statements concerning his impairments and their impact on his ability to work are considerably more limited and restricted than is established by the medical evidence," id., lacks support.  As the ALJ is not qualified to make a medical determination, see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996), presumably he relied upon the opinions of the two state agency physicians for this statement.  However, as already noted, both state agency physicians made their assessments more than a year before the worsening of Plaintiff's osteoarthritis.  Thus, the ALJ appears to have discounted Plaintiff's March 31, 2005, testimony regarding fatigue and pain based on assessments made by the state agency physicians some twenty-one months earlier. Given that the record clearly indicates a deterioration in Plaintiff's condition during the intervening period, the failure of these doctors to endorse the level of fatigue and pain to which Plaintiff later testified does not provide a valid basis for discounting Plaintiff's hearing testimony.

The ALJ rejected Plaintiff's testimony that he has

difficulty sleeping because "he has reported to treating sources that he has no difficulty sleeping [R. at 344], and testified to only using Zoloft, prescribed by his PCP, and Vioxx, on an as needed basis." (R. at 21) The report which the ALJ cites is dated December 2, 2003, seven months before the worsening of Plaintiff's condition. (R. at 344) In fact, on July 8, 2004, the date on which the deterioration was first noted, Plaintiff reported that he only "sleeps occasionally." (Id.) During his February 28, 2005, visit to Dr. Bonnet-Eymard, Plaintiff stated that "[a]t night [his] left hip is bothering him." (R. at 345) Therefore, Plaintiff's hearing testimony that he sleeps "poorly most nights," (R. at 50), is supported by the record which follows the onset of the deterioration in his condition. Additionally, while not significant by itself, the ALJ apparently overlooked or forgot that Plaintiff also testified that, in addition to Zoloft and Vioxx, he also takes indomethacin and ibuprofen for pain. (R. at 47) In sum, the reasons given by the ALJ for discounting Plaintiff's complaints of pain and fatigue are not supported by te record.

## II.  The Assessment of Plaintiff's Mental impairment

Plaintiff argues that "[t]he ALJ dismissed all of the evidence, treating and examining, in the record, concerning the claimant's mental condition." Plaintiff's Mem. at 13. The sources to whom Plaintiff refers are James K. Sullivan, M.D., John P. Parsons, Ph.D, and Sally Ann Hay, LICSW. See id. at 13-15. Having done so, in Plaintiff's view, "[t]he ALJ was acting as his own medical expert," id. at 15, since he could not rely on the state agency psychologist who "acknowledged he was presented with insufficient evidence of the claimant's condition ...," id. at 13.

Regarding Dr. Sullivan, the ALJ noted that:

On September 20, 2003[,] the claimant underwent a

10

consultative examination with James K. Sullivan, M.D.,
arranged by claimant's disability claim attorney.  Based
on his mental status examination, Dr. Sullivan offered
the diagnosis of major depressive and generalized anxiety
disorders, concluded that the claimant's symptoms limited
his ability to perform responsibilities associated with
full time work, and opined that he was totally disabled
due to a mental impairment.

(R. at 18)  After reiterating that statements regarding issues
specifically reserved for the Commissioner are not accorded any
special significance, (id.), the ALJ stated that:

Dr. Sullivan's findings are not based on the medical
evidence of the whole record, but rather from statements
by the claimant in the context of a one-time examination
arranged for the purpose of strengthening his disability
claim.  They are not afforded the same evidentiary weight
as opinions generated by treating sources in the course
of treatment.  On review of the entire record, just four
days after the date of Dr. Sullivan's report, John Burke,
Ph.D., found "insufficient evidence" to even complete a
psychiatric review technique form.  While the claimant
alleges that he has received ongoing treatment, it is
noteworthy that he did not allege a mental impairment on
his application for benefits.  And while he mentioned he
was receiving counseling on his Reconsideration
Disability Report, he has failed to submit any medical
records relative to this period.  The regulations at 20
C.F.R. § 404.1528[7] provide that a statement of symptoms

[7] Section 404.1528 provides that:

(a) Symptoms are [a claimant's] own description of [his]
physical or mental impairment. [These] statements alone are
not enough to establish that there is a physical or mental
impairment.
(b) Signs are anatomical, physiological, or psychological
abnormalities which can be observed, apart from [a claimant's]
statements (symptoms).  Signs must be shown by medically
acceptable clinical diagnostic techniques.  Psychiatric signs
are medically demonstrable phenomena that indicate specific
psychological abnormalities, e.g., abnormalities of behavior,
mood, thought, memory, orientation, development, or
perception.  They must also be shown by observable facts that
can be medically described.
(c) Laboratory findings are anatomical, physiological, or

alone is not sufficient to establish that there is a
physical or mental impairment.  The statement of symptoms
must be accompanied by signs and laboratory findings.
Although the claimant has made statements regarding his
condition before the period under review, the record does
not contain any medical information with evidence of
signs or laboratory studies establishing a medically
determinable impairment that would have interfered with
his ability to perform at least basic work activities
prior to the alleged onset date of disability, until
September 2004 when he began psychotherapy.

(R. at 19)(internal citations and footnote omitted).  Plaintiff
argues that "[p]sychiatric evaluations and 'signs' from them are
always based on the claimant's statements and behavior, and the
clinician['']s observations in connection with them.  20 C.F.R.
[§] 404.1528(b).  That is medical evidence to a psychiatrist.
Dismissing Dr. Sullivan for that reason is to ignore his opinion
for no reason."  Plaintiff's Mem. at 13.

Assuming, *arguendo*, that the ALJ should not have discounted
Dr. Sullivan's opinion because it was based on Plaintiff's
statements, the ALJ gave several other valid reasons for his
decision to accord little weight to Dr. Sullivan's assessment.
First, the ALJ recognized that Dr. Sullivan saw Plaintiff only
once and, therefore, the doctor's opinion was not "afforded the
same evidentiary weight as opinions generated by treating sources
in the course of treatment."  (R. at 19)  The ALJ also noted,
properly, that Plaintiff had not alleged a mental impairment on
his application for DIB.  (Id.); see also Gray v. Heckler, 760
F.2d 369, 374 (1st Cir. 1985)(noting that plaintiff had not

---

psychological phenomena which can be shown by the use of
medically acceptable laboratory diagnostic techniques.  Some
of these diagnostic techniques include chemical tests,
electrophysiological studies (electrocardiogram,
electroencephalogram, etc.), roentgenological studies (X-
rays), and psychological tests.

20 C.F.R. § 404.1528 (2007).

alleged a mental impairment on her application for benefits); (R. at 111).  Moreover, although Plaintiff reported to Dr. Sullivan that he had received psychiatric treatment from 1996-2003 with Charles E. Folkers, Ph.D., and that he was currently receiving counseling at the Northern Rhode Island Community Mental Health Center ("NRICMHC"), (R. at 185), no evidence from either Dr. Folkers or NRICMHC appears in the record.  Indeed, as the ALJ noted, there is no evidence of treatment for a mental impairment until September 2004.  (R. at 19); see also Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991) (noting that aside from five therapy sessions, "there is no record of any other mental health therapy during his insured status."); id. at 769 (viewing gaps in medical record as "evidence").

As for Dr. Parsons, the ALJ stated that:

> [T]he claimant was seen on one occasion by John P. Parsons, Ph.D., in another evaluation arranged by the claimant's disability lawyer.  Dr. Parsons obtained a history, administered several tests, offered the diagnoses of major depressive disorder and recurrent generalized anxiety disorder, and opined the claimant was unable to maintain gainful employment.  In addition, he completed a supplemental questionnaire which noted all but one category as moderately severe and severe.  The undersigned has evaluated this evidence and finds that even though the report is from a specialist, Dr. Parsons' opinion is inconsistent with and not supported by the medical evidence as a whole.  Moreover, this was another one-time examination performed by a source selected by claimant's representative not for purposes of treatment or impartial evaluation, but to strengthen his disability claim.  In some respects, the report represents not a medical source statement but is more akin to an advocacy opinion, and thus is accorded lesser evidentiary weight than reports generated by treating or impartial sources.

(R. at 19)(internal citations omitted).  Plaintiff challenges the ALJ's last statement, suggesting that "[b]y taking this tac[k], the ALJ assumed to be relieved of his obligation to consider,

impartially, this medical evidence which was before him."
Plaintiff's Mem. at 14.

Plaintiff overlooks the fact that the ALJ again gave several
reasons for the weight he afforded Dr. Parsons' opinion.  First,
although the ALJ recognized that Dr. Parsons was a specialist,
the ALJ found the psychologist's report to be "inconsistent with
and not supported by" the record as a whole.  (R. at 19)  The ALJ
also noted that Dr. Parsons' examination was a one-time
assessment arranged by counsel.[8]  (Id.)  It is clear that the ALJ
evaluated Dr. Parsons' report in accordance with the factors set
forth in 20 C.F.R. § 404.1527(d).  See Coggon v. Barnhart, 354
F.Supp.2d 40, 56 (D. Mass. 2005)("The hearing officer reasonably
gave [the doctor's] opinions less weight due to the lack of
'supportability,' 20 C.F.R. § 404.1527(d)(3), and lack of
'consistency[,]'20 C.F.R. § 404.1527(d)(4)[.]").  Moreover, as
noted previously, it is the ALJ's responsibility to resolve
conflicts in the evidence.  See Irlanda Ortiz v. Sec'y of Health
& Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Rodriguez v.
Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.
1981).  With respect to the ALJ's conclusion that "[i]n some
respects, the report represents not a medical source statement

---

[8] Although the Court of Appeals for the First Circuit has faulted
an ALJ's decision to accord little weight to a doctor's report just
because it was obtained on advice and referral of the claimant's
counsel after a claim for benefits had been filed, see Arroyo v.
Barnhart, 295 F.Supp.2d 214, 221 (D. Mass. 2003)(citing Gonzalez Perez
v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987)),
"an administrative law judge's decision can still pass muster if the
other reasons given to accord medical reports little weight are
adequately supported," id.  Moreover, this Court has criticized the
practice of sending claimants for consultative psychological
evaluations just prior to the hearing without a referral from the
claimant's doctor or other record evidence supporting the need for
such evaluation.  See Nield v. Barnhart, CA 03-494LO, slip op. at 11
(D.R.I. Mar. 29, 2005); see also Cline v. Sec'y of Health & Human
Servs., 875 F.Supp. 435, 440 (N.D. Ohio 1995)("Plaintiff's counsel's
'referral' to a psychiatrist is not relevant where Plaintiff's
treating physicians made no such referral.").

but is more akin to an advocacy opinion ...," (R. at 19), the
Court cannot find that this determination was unreasonable, see
Coggon, 354 F.Supp.2d at 53 ("It was not unreasonable for the
hearing officer to find that [the doctor's] opinion was one of
'advocacy[.]'"); see also Saelee v. Chater, 94 F.3d 520, 523 (9th
Cir. 1996)("[H]ere the ALJ's conclusion that [the doctor's]
solicited report was untrustworthy was a permissible credibility
determination.  The ALJ stated that [the doctor's] opinion 'is
worded in such a way that it strikes [him] as an effort by the
physician to assist a patient even though there is no objective
medical basis for the opinion.")(third alteration in original);
Nield v. Barnhart, CA 03-494LO, slip op. at 11 (D.R.I. Mar. 29,
2005)(stating that "as in many unrelated past matters in which
Dr. Parsons has participated, he stuck to the script and found
that the plaintiff suffered from Disorders that 'would make it
extremely difficult for [the plaintiff] to maintain gainful
employment on a sustained basis,'" and that the "report received
and deserved no credibility")(alteration in original); cf.
Irlanda Ortiz, 955 F.2d at 769 ("We must uphold the
[Commissioner's] findings ... if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion.")(second alteration in original)).

     Ms. Hay presents a somewhat different situation.  While Dr.
Sullivan and Dr. Parsons saw Plaintiff only once, Ms. Hay treated
him from September 30, 2004, through at least February 24, 2005.
(R. at 303-32)  She, too, diagnosed him with major depression,
recurrent, severe without psychotic features, and generalized
anxiety disorder.  (R. at 327)  In addition to her office notes,
(R. at 303-20, 329-32), Ms. Hay's records include a letter to the
Office of Rehabilitative Services (which had referred Plaintiff
to her), (R. at 321-22), a letter to Plaintiff's counsel dated
February 25, 2005, (R. at 323-24), and various forms completed

for DDS, (R. at 325-28), including a Supplemental Questionnaire
as to Residual Functional Capacity,[9] (R. at 325-26).

Regarding Ms. Hay, the ALJ stated:

> In September 2004 the claimant was referred to
> psychotherapy with Sally Ann Hay, A.C.S.W., L.I.C.S.W.,
> by the Office of Rehabilitative Services. After
> seventeen sessions, Ms. Hay summarized her observations
> in a letter to claimant's counsel, apparently at counsel's request. She felt the claimant was unable to work given
> his unique combination of emotional/social, physical, and academic
> limitations. She notes that when stressed, the claimant becomes
> easily frustrated and anxious; his comprehension and problem skills
> are compromised; and he is prone to personalize the behaviors of
> others and to become suspicious of their motivation. She found him
> to present with a profound sense of hopelessness and low self-
> esteem. She concluded by stating the claimant would not have the
> emotional tolerance to learn and retain complex procedures.
> However, she offered a contrasting alternative finding that jobs
> which were simple and repetitive would fail to engage the
> claimant's intellect sufficiently to mobilize his motivation. In
> evaluating this evidence, the undersigned Administrative Law Judge
> is not persuaded by Ms. Hay's opinion or answers supplied on the
> supplemental questionnaire, as she is not an "acceptable medical
> source" under the regulations. Additionally, her conclusions and
> assessment are conclusory, against the weight of the record as a
> whole, and inconsistent with her observations obtained during the
> course of treatment. While her report and conclusions are not
> disregarded, they are only accorded limited weight.

(R. at 18)(internal citations and footnote omitted). Plaintiff
alleges that the ALJ "simply discarded the therapist's notes and
opinion because she was not an 'acceptable medical source,'
namely an M.D. or a licensed psychologist. However, that is not
[a] valid reason for discrediting Ms. Hay ...." Plaintiff's Mem.
at 14 (internal citation omitted). Plaintiff is incorrect.

The ALJ properly recognized that a therapist is not an
"acceptable medical source ...." (R. at 18); see also 20 C.F.R.

_____

[9] On the Supplemental Questionnaire as to Residual Functional
Capacity dated February 25, 2005, Ms. Hay found Plaintiff to be mildly
impaired in three areas, moderately impaired in five, and moderately
severely impaired in four. (R. at 325-26)

§ 404.1513(a) (listing acceptable medical sources).[10]  An ALJ
"**may** also use evidence from **other sources** to show the severity of
[a claimant's] impairment(s) and how it affects [the claimant's]
ability to do work."  20 C.F.R. § 404.1513(d)(bold added).  Such
**other sources** include, but are not limited to: "(1) Medical
sources not listed in paragraph (a) of this section (for example,
nurse-practitioners, physicians' assistants, naturopaths,
chiropractors, audiologists, and **therapists**) ...."  Id. (bold
added).  Thus, the ALJ was not required to credit Ms. Hay's
opinion.

---

[10] According to 20 C.F.R. § 404.1513(a):

Acceptable medical sources are–

> (1) Licensed physicians (medical or osteopathic
> doctors);
> (2) Licensed or certified psychologists.  Included are
> school psychologists, or other licensed or certified
> individuals with other titles who perform the same
> function as a school psychologist in a school setting,
> for purposes of establishing mental retardation,
> learning disabilities, and borderline intellectual
> functioning only;
> (3) Licensed optometrists, for purposes of establishing
> visual disorders only (except, in the U.S. Virgin
> Islands, licensed optometrists, for the measurement of
> visual acuity and visual fields only);
> (4) Licensed podiatrists, for purposes of establishing
> impairments of the foot, or foot and ankle only,
> depending on whether the State in which the podiatrist
> practices permits the practice of podiatry on the foot
> only, or the foot and ankle;
> (5) Qualified speech-language pathologists, for purposes
> of establishing speech or language impairments only.
> For this source, "qualified" means that the speech-
> language pathologist must be licensed by the State
> professional licensing agency, or be fully certified by
> the State education agency in the state in which he or
> she practices, or hold a Certificate of Clinical
> Competence from the American Speech-Language-Hearing
> Association.

20 C.F.R. § 404.1513(a) (2007).

Moreover, the ALJ would not have been bound by Ms. Hay's opinion that Plaintiff "was unable to work ...," (R. at 323), even if she were an "acceptable medical source," see 20 C.F.R. § 404.1527(e)(1); see also Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d at 222; SSR 96-5p, 1996 WL 374183, at *3.   Additionally, it appears that Ms. Hay's letter was not generated in the course of her treatment of Plaintiff but, rather, was solicited by Plaintiff's counsel.   See Saelee v. Chater, 94 F.3d at 522-23 (noting that the court had "permitted an ALJ to question a doctor's credibility because, as here, the doctor's opinion letter had been solicited by the claimant's counsel").

The ALJ also stated that he found Ms. Hay's assessment to be inconsistent with her own treatment notes.   (R. at 18)   The record supports this conclusion.   For example, while she often listed Plaintiff's prognosis as "[g]uarded," (R. at 303, 308, 309, 313, 315, 320, 332), on several occasions she listed it as "[g]uarded [p]ositive," (R. at 306, 311, 312, 317, 319, 330), or "[p]ositive," (R. at 310).   On November 11, 2004, Ms. Hay noted that Plaintiff "[p]resents less anxious and distraught."   (R. at 311)   The following week, she wrote that he "[f]eels he has made some gains in therapy as he is a bit more comfortable, less guarded and feels a little increase in self-confidence."   (R. at 312)   On December 2, 2004, Ms. Hay indicated that although Plaintiff presented with increased depression, he had resumed aquatherapy and gone to a new church.   (R. at 313)   A week later, she described many of his emotions and behaviors as a "defense pattern," (R. at 315), and observed that he was making an effort to change his routine responses, (id.).   Ms. Hay stated on January 20, 2005, that Plaintiff was "slowly making progress ...."   (R. at 320)   In a January 24, 2005, letter to Barbara

18

Mulligan of the Office of Rehabilitative Services, Ms. Hay reported that Plaintiff "does demonstrate some motivation for change ...," (R. at 321), and said that he had "found [their] meetings helpful to him," (R. at 322).  Based on the foregoing, the Court concludes that the ALJ could reasonably have found that the assessment contained in Ms. Hay's Supplemental Questionnaire as to Residual Functional Capacity was "inconsistent with her observations obtained during the course of treatment."  (R. at 18)(internal citation omitted); see also Irlanda Ortiz, 955 F.2d at 769.

In addition, the Court notes that the ALJ did not "discard" Ms. Hay's notes and opinions.  He clearly stated that "her report and conclusions are not disregarded ...."  (R. at 18); cf. Arroyo v. Barnhart, 295 F.Supp.2d 214, 222 (D. Mass. 2003)(noting that despite the fact that a nurse is not an acceptable medical source, her report "could have been used to assess the severity of Plaintiff's impairments or their effect on Plaintiff's ability to work.").  In fact, the ALJ's RFC finding is consistent with Ms. Hay's supplemental questionnaire in some respects.  As noted previously, the ALJ's RFC assessment incorporated a finding that Plaintiff could "maintain concentration and attention sufficient to perform simple work tasks for an eight hour work day, assuming short work breaks on average every two hours ... [and] maintain concentration and attention required for somewhat more complex or detailed tasks occasionally, but not for extended periods of time." (R. at 21)(internal citation omitted).  Ms. Hay indicated that Plaintiff was only mildly limited[11] in his ability to perform simple tasks.  (R. at 326)  She found him to be

---

[11] A mild limitation is indicative of a "suspected impairment of slight importance which does not affect ability to function[.]" (R. at 326)

moderately limited[12] in his ability to understand, carry out, and remember instructions, perform repetitive tasks, and perform varied tasks.  (R. at 325-26)  Her statement that "[h]is depression, anxiety and lack of confidence would be expected to significantly interfere [with] learning new information and/or interact[ing] effectively [with] others (impairing his communication and perception of others)," (R. at 326), is at odds with her rating of "moderate" limitation in Plaintiff's ability to respond appropriately to co-workers, (R. at 325).

In sum, the Court finds that the ALJ's assessment of Plaintiff's mental impairment is supported by substantial evidence.  Plaintiff's claim of error based on this ground is rejected.

### Summary

I find that the ALJ's RFC assessment is not supported by substantial evidence in the record because he relied on the opinion of a state agency doctor (Dr. Schaff) who assessed Plaintiff's capabilities more than one year prior to a deterioration in his physical condition.  I further find that the ALJ's reasons for finding Plaintiff not fully credible are unsupported by substantial evidence.  Specifically, the ALJ in making his credibility finding overlooked or ignored the worsening of Plaintiff's osteoarthritis and apparently relied on assessments of state agency doctors which were no longer valid because Plaintiff's condition had worsened.  There also is no current medical opinion in the record which supports the ALJ's finding that Plaintiff's limitations are self-imposed limitations and not indicated by the medical evidence.  I find no error in the ALJ's assessment of Plaintiff's mental impairment.

### Conclusion

---

[12] A moderate limitation reflects "an impairment which affects but does not preclude ability to function[.]"  (Id.)

The Court finds that the Commissioner's decision that Plaintiff is not disabled "at any time through the date of this decision," (R. at 24), is not supported by substantial evidence to the extent that it denies Plaintiff disability benefits on and after July 8, 2004, the date the deterioration in Plaintiff's osteoarthritis is first documented in the record.[13] Accordingly, I recommend that Plaintiff's Motion to Remand be granted to the extent that the matter be remanded to the Commissioner with instructions that the entire medical record be reviewed by a medical expert, with particular attention to the record regarding the worsening of Plaintiff's osteoarthritis, and that a determination be made as to whether Plaintiff was under a disability at any time on or after July 8, 2004.  I recommend that Defendant's Motion to Affirm be denied.


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
July 26, 2007

---

[13] To the extent that Plaintiff claims that he was entitled to disability benefits during the period from June 1, 2002, the alleged onset of his disability, through July 7, 2004, Plaintiff's claim is rejected as the Court finds that substantial evidence supports the finding of the ALJ that Plaintiff was not under a disability through July 7, 2004.